# DEGGE v. HITCHCOCK.

CERTIORARI; POSTOFFICE; OFFICERS.

1. Certiorari lies to inferior courts and to special tribunals exercising judicial and quasi judicial functions, to bring their proceedings into the superior court, where they may be reviewed and quashed if it be made plainly to appear that such inferior court or special tribunal had no jurisdiction of the subject-matter, or had exceeded its juris-. diction, or had deprived a party of a right, or imposed a burden upon him or his property without due process of law (following *District of Columbia* v. *Burgdorf,* 6 App. D. C. 465; *Hendley* v. *Clark,* 8 App. D. C. 165; *Bradshaw* v. *Earnshaw,* 11 App. D. C. 495); and to that extent is in the nature of a writ of error; but it does not, like the latter, go to errors of judgment that may have been committed in the process of the exercise of an existent jurisdiction. (Following *Hendley* v. *Clark,* supra.)

2. While the writ of certiorari has been used in this District to review proceedings of inferior courts and of special officers and boards act-ing in a quasi judicial capacity (citing *Allman* v. *District of Co-lumbia,* 3 App. D. C. 8; *Jones* v. *District of Columbia,* 3 App. D. C. 26; *Keyser* v. *District of Columbia,* 3 App. D. C. 31; *Schaefer* v. *Dis-trict of Columbia,* 3 App. D. C. 33; *District of Columbia* v. *Burgdorf,* supra; *District of Columbia* v. *Allen,* 15 App. D. C. 70; and *Dis-trict of Columbia* v. *Brooke,* 29 App. D. C. 563), *quære,* whether the writ will lie to review a quasi judicial proceeding before the head of an executive department of the United States government. (Citing *Reaves* v. *Ainsworth,* 28 App. D. C. 157.)

3. Assuming, without deciding, that certiorari will lie to review a quasi judicial proceeding before the head of an executive department of the United States government in a proper case, it will not lie on the application of a party to whom the Postmaster General has closed the mails, under secs. 3929 and 4041, U. S. Rev. Stat., U. S. Comp. Stat, 1901, pp. 2686, 2749, after a hearing and upon evidence satisfactory to him that applicant was using the mails to defraud; as he had jurisdiction to entertain the charge and to pass upon the evidence, and the correctness of his determination cannot be reviewed by certiorari.

4. Secs. 3929 and 4041, U. S. Rev. Stat. permitting the Postmaster General to refuse the privileges of the mails to persons engaged in their fraudulent use, apply to two classes of cases: First, to schemes for the distribution of money, etc., by lot, chance, or drawing of any kind; and, second, to all schemes or devices for obtaining money or property of any kind by means of false or fraudulent pretenses, representations, or promises.

No. 2115.   Submitted April 6, 1910.   Decided May 10, 1910.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia discharging a rule to show cause why the writ of certiorari should not issue to review an order of the Postmaster General, and dismissing the petition therefor.                                      *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District discharging a rule to show cause why a writ of certiorari should not issue to review an order of Frank H. Hitchcock, the Postmaster General, and dismissing the petition therefor.

The petition alleges that W. W. Degge is a citizen of the State of Colorado, residing in the city of Boulder, therein; that the appellant corporations, the Wellington Association, the Wellington Development Company, and the Wellington Investment Company, were incorporated in that State with offices in Boulder; and that W. W. Degge is the president and business manager of each corporation.   It further alleges that, on Jan-

uary 21st, 1909, the Postoffice Department notified said Degge that he was charged with conducting a scheme for obtaining money through the mails by means of false and fraudulent pretenses, representations, or promises, in violation of secs. 3929 and 4041 of the Revised Statutes, U. S. Comp. Stat. 1901, pp. 2686, 2749.   The following memorandum of charges accompanied said notice:

Postoffice Department,
Office of the Assistant Attorney General,
Washington, January 21, 1909.

Memorandum for the Assistant Attorney General.
In Re W. W. Degge, Boulder, Colorado.

This person is operating a scheme for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises.   Said scheme in a general way is about as follows:

He has created a Wellington Association, which he controls and dominates, and of which he is the owner, except small interests in some other parties.   From time to time he creates various other concerns, all of which he also controls and dominates.   The stock of these various subsidiary concerns he sells through the mails to the public at various prices under par, using for the purpose great quantities of printed advertising circulars, therein falsely pretending that with the funds to be obtained from sale of such stock said companies will be developed into mining and other enterprises of great value and profit, and many other false statements.   The funds obtained by such sale of stock, he diverts to his own enrichment by various methods, such as by sale of property from said association to the subsidiary company, by contracts for commissions to said association for selling stock, and by various other methods.

In the operation of this scheme, he is getting mail as the Wellington Association, the Wellington Development Company,

the Wellington Investment Company, the Wellington System, and also in his own name, W. W. Degge.

I recommend that a fraud order be issued against him and these addresses.

P. V. Keysker,<br>Assistant Attorney.

It was further alleged that, on the hearing under said notice, no witnesses were sworn, and that the only evidence consisted of certain published advertisements, circulars, etc., issued by said Degge, of reports of Postoffice officials, and an auditor's report of the condition of said corporations. That on March 29, 1909, an order was issued by the Postmaster General to the postmaster at Boulder, directing him to refuse to deliver mail addressed to the appellants or either of them, and to return the same to the senders, indorsed "fraudulent." That the execution of said order has had the effect to destroy appellants' business by mail. That said business consists in making investments in lands, irrigation ditches, mining property, corporate securities, and the like; and that neither was or is engaged in conducting any lottery, gift, enterprise, or scheme for the distribution of the property by chance, or in any other scheme for obtaining money by means of false pretenses, etc.

That no evidence was adduced to show that appellants were engaged in a fraudulent scheme, and the matters considered were wholly insufficient to show the same. That appellants have been deprived of a constitutional right by said order, and are being damaged thereby to the extent of $25,000 per annum.

They pray for a writ of certiorari to bring up the record in said proceeding, and that the said order be annulled and set aside. Rule to show cause having issued, the Postmaster General made return thereto under oath. He denies the charge that no witnesses were examined, and gives the names of several who were called and examined in the presence of said Degge. He alleges that ample opportunity for hearing was given, and that it was found from the evidence that petitioners were engaged in carrying on a fraudulent scheme through the mails.

To this is attached as an exhibit a report by the assistant attorney general charged by law with the investigation, which he alleges, shows:

"That he, the said W. W. Degge, created a "Wellington Association," which he controls and dominates, and is the owner of said company, except for some small outstanding interests in other parties, whom he also controls; that from time to time the said Degge created various other concerns, all of which he controls and dominates, these other concerns being termed the "Wellington Development Company" and the "Wellington System;" that the stock of these various subsidiary concerns the said Degge sold through the mails to the public at various prices under par, using for the purpose great quantities of printed advertising circulars, therein falsely pretending that, with the funds so obtained from the sales of such stock, the said companies would be developed into mining and other enterprises of great value and profit, and through such advertisements and circulars the said Degge made other false and fraudulent statements; that the funds obtained by such sale of stock he, the said Degge, diverted to his own enrichment by various methods, such as by the sale of property from the said association to the said subsidiary companies, by contracts for commissions to said association for selling stock, and by various other illegal and fraudulent methods; that, in the operation of this scheme, the said Degge was getting mail through the Postoffice establishment of the United States as the Wellington Association, the Wellington Development Company, and the Wellington Investment Company, and the Wellington System, and also in his own name, W. W. Degge; all of which will more fully and at large appear by the report of the said R. P. Goodwin, filed herewith."

"Further answering the said paragraph, this respondent says that, upon the evidence satisfactory to him, as will appear by the report of the said R. P. Goodwin, assistant attorney general, filed herein, and prayed to be read as a part of this paragraph, that he found and avers the fact to be that the said

scheme of the Degge and the said corporation, as appears from the said respondent's exhibit A filed herein, was a scheme for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises, and that the said Degge and the said corporations had, for a long time prior to said order, been engaged in said business prohibited by the postal laws of the United States, and in a scheme or device for obtaining money by means of the mails of the United States, as prohibited by statute, as is more fully set out in this answer and in the said respondent's exhibit A filed herein, and prayed to be read as a part hereof."

The memorandum of the assistant attorney general occupies twenty-three pages of the printed transcript. In this are set out statements of the capital stock of the several corporations organized by Degge, his controlling ownership in the parent corporation,—the Wellington Association,—and a number of his advertisements and circular letters representing the conditions of the same, and soliciting subscriptions to stock. The list shows six subsidiary corporations, managed and controlled by Degge. It is sufficient for the purposes of this case to say that this voluminous report tends to show that Degge owned the majority of the stock in the parent association, and was engaged in purchasing property—some of no value—and disposing of it at excessive prices, to the subsidiary corporations for stock, which stock was sold for the benefit of the parent association, while representations were made to purchasers that it was treasury stock of said corporations and sold to supply means for development, etc. It also tended to show that a fraudulent dividend had been declared and published to mislead the purchasers of stock, etc. From this evidence he made the following statement:

"While acting as the head, and managing each of the subsidiary companies, and at the same time acting as head of the association and managing its business, he has so conducted the business of these various concerns as to impoverish each and all of the subsidiary companies, and enrich his inside corporation, to his own great benefit. And this despite his continuous and

persistent claims of equity, fair dealing, equality, and co-opera-
tion among all of the companies comprising what he so fondly
calls his 'system' and the 'new way.' The fraud and decep-
tion involved in this scheme of inducing the public to invest in
the subsidiary companies, by holding forth the dividends of the
association to show that the other companies ought to and
could enjoy similar success, when in fact those dividends of
the association and that success were not derived from legitimate
earnings, but were instead derived almost wholly · from the
fraudulent diversions of the money paid by the public to the
subsidiary companies to the enrichment of the association, and
from the private manipulations of the stocks of the subsidiary
companies, to the association's great profit, is of course obvious.
At the same time that Mr. Degge was thus enriching the asso-
ciation and himself, at the expense of the subsidiary companies,
his advertisements to the public were filled with loud and per-
sistent representations that his organization was the fairest and
most equitable in the West, that his was a "new way" entirely
different from other western promotions, in that, while those
were conducted in the interest of the promoter or an inside com-
pany, his was run strictly in the interest of the man who put
up the money; that his system was conducted without any spe-
cial schemes or deals to enrich the promoter against the investor;
that no one company was taking any advantage of any other,
but that all were working harmoniously together, assisting, co-
operating, and helping each other as partners. A few extracts
taken from the advertisements are quoted below."

After setting out many of the advertisements and circulars
of Degge, and giving a history in detail of many of his trans-
actions in connection with several corporations, he concludes
his report as follows:

"No effort has been made in the preparation of this memo-
randum to cover all the business transactions of these various
companies, nor to state the probable values of all the properties
which Mr. Degge has accumulated in the course of these pro-
motions. To do so would extend this memorandum to unnec-
essary length. The effort has been to state as briefly as possible,

and yet with sufficient fullness to outline clearly the character of the matters touched upon, the chief manipulations and transactions of Mr. Degge in the furtherance of what is believed has been a fraudulent scheme conceived and operated by him. Consequently, this memorandum should not be understood as covering anything that has transpired with relation to these companies.

"Any argument on the facts in this case seems uncalled for. Their reading irresistibly forces the conviction, I think, that, in the matters here described, Mr. Degge has conceived and conducted an elaborate scheme to defraud the stockholders of his subsidiary corporations and to enrich himself and his inside company, the Wellington Company (greatly to his benefit), by securing and maintaining control of the management of the affairs of all of the various companies in his hands, and using that situation for the purpose of carrying through the deals and manipulations calculated to enrich himself and his association, at the expense of the stockholders of the subsidiary companies.

"I find that said W. W. Degge, under his own hand and also under the several names of the Wellington Association, Wellington Development Company, Wellington Investment Company, and Wellington System, is engaged in operating and conducting a scheme for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises, in violation of secs. 3929 and 4041 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, pp. 2686, 2749, and I recommend that a 'fraud order' be issued against said W. W. Degge, the Wellington Association, the Wellington Development Company, the Wellington Investment Company, and the Wellington System, and their officers and agents as such, at Boulder, Colorado."

The cause having been submitted on petition and answer, the judgment appealed from followed.

*Mr. Walter B. Guy* and *Mr. O. A. Erdman* for the appellants.
    **Vol. XXXV.—15.**

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. F. Sprigg Perry* and *Mr. Reginald S. Huidekoper,* Assistants, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

There is no statute prescribing the function of, or regulating the procedure by, certiorari in the District of Columbia, hence we must look, therefor, to the common law. The writ lies to inferior courts and to special tribunals exercising judicial or quasi judicial functions, to bring their proceedings into the superior court, where they may be reviewed and quashed if it be made plainly to appear that such inferior court or special tribunal had no jurisdiction of the subject-matter, or had exceeded its jurisdiction, or had deprived a party of a right or imposed a burden upon him or his property, without due process of law. *District of Columbia* v. *Burgdorf,* 6 App. D. C. 465–471; *Bradshaw* v. *Earnshaw,* 11 App. D. C. 495–499; *Hendley* v. *Clark,* 8 App. D. C. 165–183; *Harris* v. *Barber,* 129 U. S. 366–372, 32 L. ed. 697–700, 9 Sup. Ct. Rep. 314.

To the extent indicated the writ of certiorari is in the nature of a writ of error, but it does not, like the latter, go to errors of judgment that may have been committed in the process of the exercise of an existent jurisdiction. *Harris* v. *Barber,* supra; *Re Schneider,* 148 U. S. 162–166, 37 L. ed. 406–408, 13 Sup. Ct. Rep. 572; *Hendley* v. *Clark,* and *Bradshaw* v. *Earnshaw,* supra; *Hamilton* v. *Harwood,* 113 Ill. 154; *Gaither* v. *Watkins,* 66 Md. 576, 8 Atl. 464.

The writ of certiorari has been availed of in this District, not only to review the proceedings of an inferior court, under the limitations before stated, but also of special officers and boards acting in a quasi judicial capacity,—for example, in the matter of special assessments, where such boards have proceeded in excess of their powers, or without due process of law. *Allman* v. *District of Columbia,* 3 App. D. C. 8; *Jones* v. *District of Columbia,* 3 App. D. C. 26; *Keyser* v. *District of Columbia,*

3 App. D. C. 31; *Schaefer* v. *District of Columbia,* 3 App. D.
C. 33; *District of Columbia* v. *Burgdorf,* 6 App. D. C. 465;
*District of Columbia* v. *Allen,* 15 App. D. C. 70; *District of
Columbia* v. *Brooke,* 29 App. D. C. 563.

It has never been determined, however, that the writ will lie
to review a quasi judicial proceeding before the head of an
executive department of the United States government. In
*Reaves* v. *Ainsworth,* 28 App. D. C. 157–163, the appeal was
from an order quashing a writ of certiorari that had been issued
to the Military Secretary of the United States to bring up the
proceedings before an examining board organized under the
orders of the War Department, to determine the fitness of an
applicant for promotion in the military service. The general
question of jurisdiction to bring up such a proceeding was not
discussed, but the order quashing the writ was affirmed, on
the ground that the action of the board was within the scope
of its authority.

In the view that we have taken of the present case it is not
necessary to determine this general question of jurisdiction.
Assuming, without deciding, that the jurisdiction exists, we
agree with the learned trial justice, whose judgment is under
review, that the facts shown in the record do not warrant its
exercise.

There is no question but that the Postmaster General gave
due notice to the appellants of the charges against them, and
accorded them a hearing in due course. The only question
is whether he had the power conferred upon him by law to
entertain the charge of fraud in the use of the mails and, find-
ing it proved, to issue the order complained of.

The appellants contend that secs. 3929 and 4041, Rev. Stat.
U. S. Comp. Stat. 1901, pp. 2686, 2749, limit the power of
the Postmaster General to refuse the privilege of the mails to
persons engaged "in conducting any fraudulent lottery, gift
enterprise, or scheme for the distribution of money or of any
real or personal property, by lot, chance, or drawing of any
kind;" and that he exceeded his power in this case, because the
scheme or business plan of the appellants is not of that descrip-

tion. It is quite true that the scheme is not a lottery or a gift enterprise within the meaning of the section; nor did the Postmaster General so decide. Following the extract above given, the section proceeds as follows: "Or in conducting any other scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations, or promises."

The language used in the statute plainly shows that it was intended to apply to two classes of cases: "First, to schemes for the distribution of money, etc., by lot, chance, or drawing of any kind; second, to all schemes or devices for obtaining money or property of any kind by means of false and fraudulent pretenses, representations, or promises." *Public Clearing House* v. *Coyne,* 194 U. S. 497–505, 48 L. ed. 1092–1097, 24 Sup. Ct. Rep. 789.

The Postmaster General found, upon evidence satisfactory to him, that the scheme of the appellants was one of the second class provided for by statute. As he clearly had jurisdiction to entertain the charge, and pass upon the evidence submitted in support of the same, the correctness of his determination cannot be reviewed by certiorari.

The judgment discharging the rule and dismissing the petition must be affirmed, with costs. *Affirmed.*